**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

v.

FUNDS IN THE AMOUNT OF $574,840;
FUNDS IN THE AMOUNT OF $63,184;
FUNDS IN THE AMOUNT OF $2,000;
FUNDS IN THE AMOUNT OF $856; and
FUNDS IN THE AMOUNT OF $21,100,

       Defendants.

                                         /

STEPHEN UNSWORTH, and
RACHEL PILLSBURY,

       Claimants.

                                         /

No. 1:11-cv-7803

**Judge Milton I. Shadur**

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION OF CLAIMANTS
TO STAY CIVIL FORFEITURE PROCEEDING
PURSUANT TO 18 U.S.C. § 981(g)(2)**

**MOTION AND INTRODUCTION**

       Claimants hereby move to stay theses civil forfeiture proceedings pursuant to 18 U.S.C. § 981(g)(2), on the grounds that the forfeiture proceedings will burden the right of the claimants against self-incrimination in the related and pending criminal prosecutions, and ask that these civil forfeiture proceedings be stayed until the conclusion of their pending related criminal prosecutions in Cook County. *People of the State of Illinois v. Unsworth and Pillsbury*, Circuit Court of Cook County Case No. 11 CR 11190.

## STATEMENT OF RELEVANT FACTS

The essential facts are brief and undisputed[1]: in or around May 2011, DEA agents began investigating Claimant Stephen Unsworth and his girlfriend and roommate, Claimant Rachel Pillsbury, for involvement in drug trafficking.

On June 20, 2011, agents surveilled Claimants going to and from their residence in Chicago, Illinois, and Unsworth at a storage facility in West Ogden, Cicero, Illinois. The investigation eventually led to searches of Claimants' residence, their vehicles, storage lockers associated with their name/s, and to the seizures of the five defendant properties in this case. Defendant $63,184 was seized from Claimants' residence, $30,000 of which was "found in the blue backpack that agents observed Pillsbury carrying into the residence earlier" (*see* Doc. # 1 at p. 5 ¶ 16); defendant $856 was found and seized "[d]uring the search of Pillsbury's Audi" (*Id*. ¶ 18), defendant $2,000 was found and seized "[d]uring the search of Unsworth's Caravan" vehicle (*Id*. ¶ 19); defendant $21,100 was found in and seized from "Pillsbury's Access storage locker" in Denver, Colorado (*Id*. ¶¶ 21-23); and the defendant $574,840 was seized from the storage unit in Cicero rented by Pillsbury, where Unsworth was observed (*Id*. ¶¶ 6, 17).

> **In connection with the facts described above**, Unsworth and Pillsbury were indicted for the offenses of (i) possession with the intent to deliver more than 30 grams but less than 500 grams of marijuana and, (ii) possession with the intent to deliver psilocyn in Cook County, case number 11 CR 11190. Pillsbury was also indicted with the offenses of (i) possession with the intent to deliver in excess of 500 grams of marijuana and, (ii) possession with the intent to deliver a controlled substance, MDMA in Cook County, case number 11 CR 11221.

Doc. # 1 at p. 7 (emphases added).

## MEMORANDUM OF LAW

A stay of this civil forfeiture is authorized and warranted by 18 U.S.C. § 981(g)(2). That

---

[1] The facts are derived from the government's allegations in its complaint for forfeiture: Doc. #1.

statute provides:

> Upon the motion of a claimant, the court shall stay the civil forfeiture proceeding with respect to that claimant if the court determines that—
>
> (A) the claimant is the subject of a related criminal investigation or case;
>
> (B) the claimant has standing to assert a claim in the civil forfeiture proceeding; and
>
> (C) continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation or case.

§ 981(g)(2). Claimants satisfy each prong, which will now be addressed in turn.

**I.  Claimants Are Each The Subject of A Related Criminal Case**

As noted, Claimants have each been "indicted for [drug trafficking] offenses" in Cook County in "connection with" the identical "facts" that underlie this civil forfeiture proceeding. Thus, each claimant is "the subject of a related criminal … case" and it cannot reasonably be disputed that Claimants have satisfied the first prong of § 981(g)(2).

**II.  Each Claimant Has Standing to Assert a Claim in this Civil Forfeiture Proceeding**

Each Claimant has standing in this civil forfeiture action, as the government admits Claimants' relationship to the defendant properties in its complaint for forfeiture; and in fact, it is Claimants' relationship to the defendant properties which forms the alleged basis for forfeiture here.

Claimants have Article III standing, otherwise known as the Constitutional "case or controversy" requirement[2]. In this circuit, establishing standing in a civil forfeiture action is

---

[2] *See e.g. Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1014 (N.D. Ill. 2002): "[T]o satisfy the standing requirements of Article III of the Constitution, [one] must allege: (1) a personal injury, (2) fairly traceable to the defendant's allegedly unlawful conduct and (3) which is likely to be redressed by the requested relief. *Johnson v. Allsteel, Inc.*, 259 F.3d 885, 887 (7th

"undemanding" and a claimant need "not own or control" the defendant property, she only "must allege [ ] an immediate threat of injury" if the property "is forfeited". *United States v. 5 S 351 Tuthill Rd.*, 233 F.3d 1017, 1022 (7th Cir. 2000). *See also e.g. United States v. $ 4,224,958.57*, 392 F.3d 1002 (9th Cir. Cal. 2004) (citing *United States v. One Lincoln Navigator*, 328 F.3d 1011, 1013 (8th Cir. 2003) ("In a forfeiture case, a claimant's Article III standing turns on whether the claimant has a sufficient ownership interest in the property to create a case or controversy. This threshold burden is not rigorous.")

> To demonstrate Article III standing in a civil forfeiture action, a claimant must have "a sufficient interest in the property to create a case or controversy." *Id. at 1191*. This **burden is not a heavy one, at least at the initial stages of a forfeiture suit.** *Id.* A "claimant need demonstrate only a colorable interest in the property, for example, by showing **actual possession, control**, title, or financial stake." *Id.* To do so at the motion to dismiss stage, "a claimant must allege that he has an ownership or other interest in the forfeited property." *United States v. $ 191,910.00 in U.S. Currency, 16 F.3d 1051, 1057 (9th Cir. 1994), superseded on other grounds as stated in United States v. $ 80,180.00 in U.S. Currency, 303 F.3d 1182, 1184 (9th Cir. 2002)*. In their pleadings, the Kim Claimants specifically **alleged an ownership interest** in the May 2004 properties, which was **sufficient at the initial stages of the litigation to establish that they had standing to challenge the civil forfeiture action**.

*United States v. Real Property Located at 475 Martin Lane,* 545 F.3d 1134, 1140 (9th Cir. 2008) (emphases added.)

Here, Claimants have each alleged (under oath) an ownership and possessory interests in the defendant properties, which is more than enough to give them standing in this action. See

---

Cir. 2001) (quoting *Allen v. Wright*, 468 U.S. 737, 751, 82 L. Ed. 2d 556, 104 S. Ct. 3315 (1984)). The personal injury must be an actual or imminent injury that is concrete and particularized. *Perry v. Sheahan*, 222 F.3d 309, 313 (7th Cir. 2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992)). This means that mere indignation does not suffice to establish standing. *United States v. 5 S 351 Tuthill Rd.*, 233 F.3d 1017, 1022 (7th Cir. 2000)."

4

**Amended Verified Claim of Stephen Unsworth**, filed 1/11/12; **Amended Verified Claim of Rachel Pillsbury,** filed 1/11/12. [3]

Given that all of the defendant properties were taken from Claimants' immediate possession and control, there can be no doubt that they have standing to contest this forfeiture action. The dominion and control Claimants had over the seized currency is also strong evidence of ownership and standing in a forfeiture case and all circuits are in accord. *See e.g. United States v. $ 38,570 in U.S. Currency,* 950 F.2d 1108, 1113 (5th Cir. 1992); *$ 191,910.00 in U.S. Currency,* 16 F.3d at 1058; see also *United States v. $ 148,840.00 in United States Currency*, 521 F.3d 1268, 1277 (10th Cir. 2008).

As noted, defendant $63,184 was seized from Claimants' residence and $30,000 of that property was "found in the blue backpack that agents observed Pillsbury carrying into the residence earlier" (*see* Doc. # 1 at p. 5 ¶ 16). In other words, agents observed Claimant Pillsbury exercise possession, dominion and control over a portion of the defendant property. Defendant $856 was found and seized "[d]uring the search of Pillsbury's Audi" (*Id*. ¶ 18), and defendant $2,000 was found and seized "[d]uring the search of Unsworth's Caravan" vehicle (*Id*. ¶ 19); which when coupled with each Claimant's respective assertion of ownership as to those properties is clearly enough to establish standing in any circuit. Cf *$ 148,840.00 in United States Currency*, 521 F.3d 1268, 1277 (claimant established constitutional standing when the currency

---

[3] At the status hearing on 9 January 2011, the issue of Claimants' standing was discussed with the Court, which led to a continuance of the status hearing to 19 January 2012 (Doc. #19, Docket Entry). Both the issue of the sufficiency of Claimants' previously filed claims and the anticipated responses of Claimants to the government's special interrogatories were discussed. Claimants have concluded that the proper way to now proceed in this litigation is to firmly establish their standing with the filing of their amended claims and then seek to stay any further proceedings in this court pending the resolution of the related criminal case.

was seized from the vehicle claimant was driving and claimant subsequently asserted ownership of the currency and had obvious possession and control over the currency when it was taken).

> In cases in which a person has asserted an ownership interest, our sister courts have not required the claimant to present the type of explanatory evidence urged by the government to establish his or her standing. *See $ 38,570 in U.S. Currency, 950 F.2d at 1112*; *see also $ 191,910.00 in U.S. Currency, 16 F.3d at 1058* ("[A] simple claim of *ownership* will be sufficient to create standing to challenge a forfeiture."); *cf. Rodriguez-Aguirre, 264 F.3d at 1206* (recognizing, in a *Fed. R. Crim. P. 41(e)* case, that "proof of *ownership,* as opposed to *lawful possession,* is . . . not required [to establish Article III standing] . . . even at a later stage in the proceedings such as a summary judgment or trial"). Rather, "courts have held that an allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture." *United States v. United States Currency, $ 81,000.00, 189 F.3d 28, 35 (1st Cir. 1999)*. The required ownership interest can be demonstrated in a variety of ways, "including showings of actual possession, control, title and financial stake." *United States v. 1998 BMW "I" Convertible, 235 F.3d 397, 399 (8th Cir. 2000)* (quotation omitted). . . . . . . . . . . . . . . . . . . .
>
> Moreover, the Ninth Circuit held that, given the claimant's assertion of ownership, it was of no moment that he invoked his privilege against self-incrimination at his deposition, when asked to explain his interest in detail. *$ 191,910.00 in U.S. Currency, 16 F.3d at 1057, 1058 n.13*. It was enough that he claimed to own the money taken from his possession. *Id.*

*$ 148,840.00 in United States Currency*, 521 F.3d at 1274-1275 (10th Cir. 2008)[4]. In *$ 38,570 supra,* the court explained that no additional evidence was necessary because, like here, the forfeiture complaint alleged that defendant property was taken from claimant's possession:

> **Flores need not have supplemented his claim with additional evidence, because the government had admitted Flores' relationship to the currency in its complaint.** We recognize that ownership can be evidenced in a variety of ways. Courts generally look to indicia of dominion and control such as

---

[4] *See, also, United States v. $ 85,668.00 in United States Currency,* 2009 U.S. Dist. LEXIS 45064 (D. Utah 2009) (claimant's unequivocal claim of ownership over seized currency, coupled with undisputed evidence that money was taken from his possession and control, was sufficient to confer constitutional standing), citing *United States v. $148,840.00,* 521 F. 3d 1268, 1276-77 (10th Cir. 2008)

> possession, title, and financial stake. *[citation omitted]* Here, the government admitted, and the district court explicitly found, facts indicating Flores' involvement with the currency. The district court noted Flores' presence at the scene of the seizure and the circumstances surrounding Flores' alleged relationship to the currency, and the government's complaint clearly specified that Flores exercised some form of dominion over the currency. While Flores' claim itself did not provide evidence of his ownership interest, we hold that in this case, **Flores' claim of ownership, coupled with the government's allegations of Flores' involvement with the seized *res*, are sufficient to establish standing**.

*Id*, at 1113 (5th Cir. 1992) (emphases added).

To be sure, to establish Article III standing, a claimant "**need not prove the merit of his underlying claim**. He must, however, be able to show at least a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement." *United States v. $ 9,041,598.68,* 163 F.3d 238, 245 (5th Cir. 1998) (emphases added.)

"In order to contest a forfeiture, a claimant need only have some type of property interest in the forfeited items. This interest need not be an ownership interest; it can be any type of interest, including a possessory interest." *United States v. $ 191,910.00,* 16 F.3d 1051, 1057 (9th Cir. 1994)

In *United States v. United States Currency*, $ 81,000.00, 189 F.3d 28, 39 (1st Cir. 1999), the court noted that for standing, "the claimant need not prove the full merits of her underlying claim" and only needs show "a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement", that "[a]n owner **or possessor** of property that has been seized necessarily suffers an injury that can be redressed, at least in part, by return of the seized property" (189 F.3d at 35) (bold added), and **ultimately reversed the district court's finding that the claimant there lacked standing**:

> The cases cited by the district court rejecting standing for the legal title holder of

the res almost all invariably have one theme in common: a lack of involvement by the legal title holder with the res. In *United States v. Vacant Land Located at 10th Street & Challenger Way in Palmdale, California*, 15 F.3d 128 (9th Cir. 1993), the claimant had made no payments on the mortgage or taxes due on the property and did not even have a key necessary to enter it. See id. at 130. In 526 Liscum Drive, the claimant held title to the property in Ohio where her father lived, but she herself lived in California and had only visited the property once. See *526 Liscum Drive*, 866 F.2d at 215. In *One 1981 Datsun 280ZX*, although the claimant held legal title to the car and the automobile was kept at the father's house, it was doubtful that the seventy-two year old claimant with a heart condition would have driven the car. See *One 1981 Datsun 280Z X*, 563 F. Supp. at 475. Finally, in *United States v. Certain Real Property Located at River Road, Eliot, York County, Maine*, 839 F. Supp. 1 (D. Me. 1993), aff'd without published opinion, 23 F.3d 395 (1st Cir. 1994), although the claimant had legal title to the property, his father, who had transferred the property to him, continued to live on the property and pay all the necessary taxes and upkeep, and the claimant had no knowledge about the property. See id. at 3. **John Bulger's involvement with the joint account was far greater than that of the claimants cited above. He acted as a joint owner would, writing checks and withdrawing money, and exercised dominion and control over the account.**

*$ 81,000.00*, 189 F.3d at 39.

Here, if the defendant properties here are forfeited, Claimants, as even mere possessors of any part of the defendant properties, will certainly "suffer an injury that is more than intellectual, psychological or ideological", they "will lose the opportunity to receive" the property to continue their possession, which "is more than enough to give [them] an actual stake in the outcome of the suit, and to make [their] dispute with the government a genuine 'case or controversy' ". *5 S 351 Tuthill Rd.*, 233 F.3d at 1022.

A fortiori, it must be noted that the *Tuthill* court expressly recognized that it was holding contrary to "some sister circuits" that had required *more* of drug asset forfeiture claimants than of other litigants to establish standing, and rejected the " 'dominion and control' formulation" whereby other courts had thrown out a claimant for a supposed lack of standing when the claimant was claimed to be "a strawman holding nominal title as a subterfuge for a drug

trafficker, rather than being a true owner of an interest in the property." 233 F.3d at 1022 (disapproving of *United States v. Vacant Land*, 15 F.3d 128, 130 (9th Cir. 1993)). The *Tuthill* court was unequivocal:

> As a matter of public policy, we can see the reason for closing courts to these claims of nominal owners, because they are in furtherance of an illegal and socially destructive purpose. **But the social imperatives at work in these cases hardly justifies characterizing the problem as one of constitutional standing.** We require a plaintiff to demonstrate standing in order to assure that we are refereeing an actual, rather than a hypothetical, dispute. See *Lujan*, 504 U.S. at 560-61. Indeed, we police a plaintiff's standing precisely to ensure that we are acting as a court, rather than as "ombudsmen of the general welfare," a role more properly ascribed to Congress. *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 487, 70 L. Ed. 2d 700, 102 S. Ct. 752 (1982). It seems to us that **in scrutinizing** a would-be forfeiture plaintiff's interest for **evidence of straw ownership, courts are not policing their own exercise of power, but policing those whom they perceive to be doing the bidding of drug traffickers,** by refusing to provide an avenue of legal redress. **One might call it judicial abdication in the service of judicial activism.** Cf. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 726 F.2d 1150 (7th Cir. 1984) (dissenting opinion).
> …
> So **we will hew to the traditional "actual stake in the outcome" test in analyzing** whether Bochnewych has **standing** to challenge the government in this case. The facts suggest that he does have a sufficient interest in the land to give him an actual stake in the outcome of this dispute, **even though he may not own, dominate or control the land.**

*5 S 351 Tuthill Road, supra,* 233 F.3d 1017, 1022-1023 (emphases added). *Tuthill* found standing for its claimant based on him being a mere "beneficiary of a land trust" *Id*. at 1021.

> Courts should not [ ] conflate the constitutional standing inquiry with the merits determination that comes later. **See *United States v. 5 S 351 Tuthill Rd.,* 233 F.3d 1017, 1023-24 (7th Cir. 2000)** (criticizing tests of straw ownership that deny standing rather than denying claims on their merits).
> At the initial stage of intervention, the requirements for a claimant to demonstrate constitutional standing are very forgiving. In general, any colorable claim on the defendant property suffices.

*United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass*

9

*Millions Lottery Ticket No. M246233*, 326 F.3d 36, 41 (1st Cir. 2003). Even the government's own forfeiture expert agrees with this view:

> Although [standing and ownership] are sometimes blurred in reported decisions, they should properly remain separate because they pertain to different stages of the forfeiture case. See Stefan D. Cassella, Asset Forfeiture Law in the United States 332 (2007) ("Standing and ownership are separate concepts that are often confused in the case law. . . . [S]tanding and ownership come into play at different stages in the civil forfeiture case and are governed by different bodies of law.").
> …
> "[a] person with standing to contest the forfeiture can engage in pre-trial discovery, file dispositive motions, put the Government to its proof in the first phase of the forfeiture trial . . . , and otherwise litigate the forfeiture case **whether or not he ever asserts innocent ownership as an affirmative defense to the forfeiture**." Cassella, supra, at 334.

*U.S. v. Assets Described in "Attachment A"*, 2011 U.S. Dist LEXIS 48794 *9-10, (M.D.Fla. May 6, 2011) (emphasis added).

Here, as noted in the factual statement, and as the government concedes, all of the properties were seized from either Claimants' immediate possession and control, or from locations which the government concedes Claimants exercised dominion and control over. Therefore, it cannot be reasonably disputed that Claimants each have Article III standing here.

It should be noted that Claimants have also established what has been called by some courts, statutory standing. A claimant may meet its burden of statutory standing by complying with the provisions of Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which in relevant part provides that "[t]he claim must: (A) identify the specific property claimed; [and] (B) identify the claimant and state the claimant's interest in the property [ ]". *See e.g. $148,840.00, supra,* 521 F.3d 1268, 1273 & n.3 (10th Cir. 2008) (noting that Article III standing requires the existence of a case or controversy, whereas statutory

standing requires procedural compliance).

Claimants' amended verified claims each meet the requirements of Rule G(5). They each identify the specific amounts of currency in question which they claim, the case number, and state that they each "claim[] an ownership and possessory interest in, and the right to exercise dominion and control over, all of the" specific defendant property to which they claim an ownership interest in.

Claimants have each met their burden as to the standing requirement of § 981(g)(2)(B).

### III. Continuation of the Forfeiture Proceeding Will Burden the Right of the Claimants Against Self-Incrimination in the Related Investigation or Case

On or about December 8, 2011, Plaintiff served UNITED STATES' SPECIAL INTERROGATORIES AND REQUESTS FOR PRODUCTION TO CLAIMANT, "pursuant to Rule G(6)(a)' and (6)(b) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims, and the Federal Rule of Civil Procedure 33" ("The Discovery Requests") on each Claimant.

The Discovery Requests, among other inquiries, ask Claimants to identify their current address and all addresses for the last five years and require that Claimants list the inclusive months and years lived at each address (Special Interrogatory 1), require Claimants to identify which of the five properties they each claim and to "state with particularity your current interest in each of the specified properties and "the full circumstances under which that interest arose" and to state "others[']" interest is one is known If others also have an interest, please state their interest (*see Id.* at pp. 2-3, Special Interrogatory No. 3), and all persons who know about Claimants' interest/s in the defendant properties and whether they have ever declared the defendant properties on tax returns. *Id.* at pp. 4-5, special interrogatories numbered 8 and 9.

Additionally, interrogatories numbered 4-6 read as follows:

**SPECIAL INTERROGATORY NO. 4:**
For each of the five specifies properties named in the verified complaint that you have claimed, if you have any records, documents, or tangible items that reflect or are relevant to your interest in the defendant property or your claim to the defendant property, please identify each piece of evidence with specificity, including the name, address, and telephone number of its custodian.

**SPECIAL INTERROGATORY NO. 5**:
Please list each and every source from which you claim that the defendant property, for each of the properties you are claiming a property right in, was derived, including the exact amount of money derived from each source. Your answer should also include: the date the currency, or any portion of the money, was obtained, and from whom (name, address, and telephone number) the currency was obtained and the reason you obtained the currency. If the currency, or any portion of the currency, was obtained by you in the form of a check and converted to cash, list the payer and payee of the check(s), the amount thereof, and the approximate date thereof. If you originally received any portion of the defendant property in some other form besides cash or check, list the form of payment, the amount of the payment, the date, and the reason such payment was made to you or to such other person or organization. Please identify each witness (by name, address, and telephone number) and each document (and the name, address, and telephone number of the custodian of the document) that supports your answer.

**SPECIAL INTERROGATORY NO. 6:**
State if you place, or caused to be placed, any or all of the $574,840 United States currency and $21,000 currency inside the storage units where it was discovered by law enforcement officers, and identify the amount of currency you placed or caused to be placed inside either the Chicago unit or the Denver storage unit, when that was done, and why that was done. If you did not place the defendant property inside the storage units, identify by name, address, and telephone number the person(s) who placed the defendant property inside the storage lockers.

*See* United States' Special Interrogatories at pp. 3-4.

The Fifth Amendment "not only protects the individual" in a criminal prosecution, but also privileges him to "not answer official questions put to him in any proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973); *Kastigar v. United States,* 406 U.S.

441, 445 (1972).

> The general standard for a valid assertion of the Fifth Amendment privilege against self-incrimination is well established...to assert the privilege, respondents must show that their testimony would 'support a conviction under a … criminal statute or furnish a link in the chain of evidence needed to prosecute [them] for a … crime. 'Indeed, **it is enough if the responses would merely provide a lead or clue to evidence having a tendency to incriminate**. The privilege is validly invoked … where there are substantial hazards of self-incrimination that are real and appreciable, not merely imaginary and unsubstantial. Finally, **the existence of such a hazard is generally determined from examination of the questions, their setting**, and the peculiarities of the case.

*United States v. Troescher,* 99 F.3d 933, 934-935 (1996) (emphases added). Here, the context and content of the government's discovery requests make clear that responses would unquestionably provide explicit evidence that could be used to incriminate Claimants in their criminal trial, and would or could also provide a lead or clue to evidence having a tendency to incriminate each Claimant.

Any further advancement of this forfeiture proceeding will burden each Claimants' absolute right against self-incrimination in the related criminal prosecutions of each of them, which are ongoing. Therefore, it cannot reasonably be disputed that this civil forfeiture action, and civil discovery which has already been served, will burden each Claimant's Fifth Amendmet rights, and each Claimant has met the last and final element of 18 U.S.C. § 981(g)(2), warranting an order staying the forfeiture proceedings. This action must be stayed.

## **CONCLUSION**

For the foregoing reasons, civil discovery will inappropriately provide evidence that the state would otherwise not be entitled to in Claimants' criminal prosecutions, and Claimants' rights against self-incrimination will be burdened if this proceeding is permitted to advance any

13

further. Claimants respectfully request that the Court order a stay of this civil forfeiture proceeding pursuant to 18 U.S.C. § 981(g)(2).

                                            Respectfully submitted,

Dated: 11 January 2012

                                            s/*David M. Michael*
                                            DAVID M. MICHAEL
                                            Law Offices of David M. Michael
                                            101 California Street, Suite 2450
                                            San Francisco, CA 94111
                                            Telephone: (415) 946-8996
                                            Facsimile: (877) 538-6220
                                            david@davidmichaellaw.com

                                            Attorney for Claimant
                                            STEPHEN UNSWORTH

Dated: 11 January 2012

                                            /s/*Michael J McDermott*
                                            Michael J McDermott
                                            Law Offices of Michael James McDermott
                                            53 W. Jackson Blvd. Suite 1615
                                            Chicago, IL 60604
                                            Telephone: (312)697-0022
                                            Email: mmcdermott50@hotmail.com

                                            Attorney for Claimant
                                            RACHEL PILLSBURY

**CERTIFICATE OF ELECTRONIC SERVICE**

      I hereby certify that, on 11 January 2012, I caused to be electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

AUSA Daniel E. May  
Office of the U.S. Attorney  
Northern District of Illinois  
219 S. Dearborn Street, 5th Floor  
Chicago, Illinois 60604  
daniel.may@usdoj.gov

                                            s/*David M. Michael*  
                                            DAVID M. MICHAEL