# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11 C 7803 |
| ) | |
| **FUNDS IN THE AMOUNT OF** ) | |
| **$574,840**, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |
| ) | |
| **STEPHEN UNSWORTH** and ) | |
| **RACHEL PILLSBURY**, ) | |
| ) | |
| Claimants. ) | |

## MEMORANDUM OPINION AND ORDER

This action, launched by the United States' Verified Complaint for Forfeiture of five

items of property -- funds in the amounts of $574,840, $63,184, $2,000, $856 and $21,100 -- has

been at an impasse for months, ever since claimants Stephen Unsworth ("Unsworth") and Rachel

Pillsbury ("Pillsbury") weighed in with their respective conclusory claims of possessory interest

or ownership interest or both.  When the government then promptly responded with a motion

(Dkt. 14) to strike those claims (1) because of their asserted noncompliance with the

Supplemental Rules to the Federal Rules of Civil Procedure[1] and (2) because of the claimants'

asserted failure to establish their requisite Article III standing, both claimants retorted with a joint

_____

[1] Rule G of those Supplemental Rules deals with in rem civil forfeiture actions and is
cited here simply as "Rule G --."

motion of their own and a supporting memorandum of law (together Dkt. 21), seeking a stay of these proceedings pursuant to 18 U.S.C. § 981(g)(2) ("Section 981(g)(2)"), a motion triggered by the claimants' concerns as to criminal prosecutions brought against them in the Circuit Court of Cook County.

Since that time the parties have been embroiled in disputes that have effectively blocked this action from going forward. Both sides have urged their respective positions vigorously, with the intransigence of Unsworth's counsel (who has also served as lead counsel in actions taken jointly by the two claimants) having been the principal roadblock standing in the way of this Court's desire to resolve the Article III standing issue.

This Court has always been solicitous of the rights of litigants who are concerned lest their disclosures in civil litigation may rise up to prejudice then in criminal proceedings, either pending or impending. Thus, for example, it has slowed up the entire discovery process in 42 U.S.C. § 1983 lawsuits against certain police officers (those who have either been indicted or are the subject of criminal investigation) by adopting the device of staying the depositions of those officers. Such stays enable the officers to avoid their having to call upon the Fifth Amendment privilege against self-incrimination, a step that would give rise to adverse inferences in the civil action under the authority of Baxter v. Palmigiano, 425 U.S. 308 (1976).

Just so here. Attached to this memorandum opinion and order are this Court's oral statement of February 24, 2012 dealing with the subject (Ex. 1) and the March 14, 2012 protective order (Ex. 2) that was then issued (Dkt. 30). Unfortunately defense counsel then elected to frustrate the constructive purpose sought to be served by the entry of that order -- counsel provided largely nonconstructive nonresponses to the Special Interrogatories that were

propounded by the government under the mantle of insulation that the protective order sought to provide for the claimants.  Thus, as the government has pointed out, the lead defense counsel (a California lawyer) advanced the same arguments in response to the government's Special Interrogatory 6 that he had recently urged unsuccessfully before the Ninth Circuit in another civil forfeiture action, United States v. $133,420 in United States Currency, 672 F.3d 629 (9th Cir. 2012) -- and he has provided much the same type of stonewalling in dealing with Special Interrogatories 3, 4, 5, 8 and 9.

What has ensued has been a series of skirmishes marked by the government's motion to compel answers to those Special Interrogatories (Dkt. 34), followed by claimants' response to that motion, coupled with a renewed motion to stay this action pursuant to Section 981(g)(2) (Dkt. 37), and most recently by the government's renewed motion to strike claimants' claims (Dkt. 45) and then, late last month, by claimants' supplemental brief reasserting their legal position (Dkt. 48), this time coupled with their joint motion to suppress or quash the government's acquisition of the funds at issue here (Dkt. 49).  All of this has stalemated the litigation.

For months the claimants here have been in a position much akin to that of the contemnor who, having been placed in custody to induce his compliance with a performable court order that he has refused to honor, is metaphorically said to have the keys to his cell in his own pocket. With existing caselaw far from clear as to whether a claimant in a civil forfeiture proceeding under the circumstances of this case can establish the requisite Article III standing by his or her ipse dixit, and with this Court having the threshold obligation to make that finding before going on to the merits, it proposed to -- and did -- enter a protective order (as authorized by Section

981(g)(3)) to protect claimants' other vital interests even while they provided, under seal, the factual input that would enable this Court to rule on an informed basis.

As already discussed, that protective order was entered in March of this year. But claimants' counsel have stubbornly refused to respond to the government's Special Interrogatories (interrogatories authorized by Rule G(6)(a)), seeking to justify that refusal in material part by the same arguments that the same California lawyer had advanced and that were found wanting by the Ninth Circuit earlier this year. Patience has its limits -- resolution of the parties' impasse is past due.

This Court regrets the turn that matters have taken, especially given its efforts to protect the interest of the claimants while dealing with this forfeiture action. That level of regret extends to the claimants' most recent merits-related filing (Dkt. 49), as to which this Court expresses no substantive views because claimants' conduct has frustrated resolution of the Article III standing issue that must precede merits-related considerations.


## Conclusion

In sum, the government has been within its rights in posing its Special Interrogatories under Rule G(6) and in seeking to strike the claimants' filings under Rule G(8)(c). At this point this Court breaks the existing logjam (1) by granting the government's motions (Dkts. 14 and 45) to strike the Unsworth and Pillsbury claims and (2) by denying the claimants' last-referred-to motion (Dkt. 49), except the portion of that motion that seeks leave for its filing under seal,

which is granted.  Finally, a status hearing date is set for 8:45 a.m. September 12, 2012 to discuss what further proceedings are appropriate.

_____
Milton I. Shadur
Senior United States District Judge

Date:  August 30, 2012

1      THE CLERK:  11 C 7803, United States of America

2  versus $2,000.00.

3      MR. MAY:  Do you have to place a call to

4  California?  He called me last night.

5      THE CLERK:  I don't know if I have his number.

6      MR. MAY:  I have his number.

7      THE CLERK:  Do you have his number?  Okay, because

8  he didn't call me.  What have you got, what number?

9      MR. MAY:  I have a cell number.

10      THE CLERK:  Okay.

11      MR. MAY:  It is 510.

12      THE CLERK:  Okay.

13      MR. MAY:  388-2970.

14      THE CLERK:  2970.  Great.

15      MR. MICHAEL:  Hello.

16      THE CLERK:  This is Sandy with Judge Shadur calling

17  on 11 C 7803, United States of America versus $2,000.00.

18      THE CLERK:  Hello.  Can you not hear me?

19      MR. MICHAEL:  I can barely hear you.

20      THE CLERK:  Okay.

21      MR. MICHAEL:  Let me try another one.

22      THE CLERK:  How about now, can you hear me now?

23      MR. MICHAEL:  That is a lot better.

24      THE CLERK:  Okay.  This is 11 C 7803, United States

25  of America versus $2,000.00.

Ex 1-1

1     THE COURT: Well, it is a lot more than 2,000. The

2     first number on this one is $574,000.00. But in any event

3     there are five funds that are named as defendants in this

4     action.

5     Counsel, do you want to reflect your appearance for

6     the record, please.

7     Hello.

8     THE CLERK: Can you hear the Judge?

9     MR. MICHAEL: I can hear the Judge. I was just

10    waiting for Mr. May to announce his appearance first.

11    THE COURT: Well, after you, Alphonse, after you

12    Gaston. You are out in telephone land.

13    MR. MICHAEL: Well said, your Honor. This is

14    Michael -- this is David Michael. This is David Michael

15    appearing for Steve Unsworth. And I don't know if other

16    counsel is appearing for Rachel Pillsbury, but I will special

17    appear for her.

18    THE COURT: Okay.

19    MR. MAY: Daniel May on behalf of the United

20    States.

21    THE COURT: Okay. Well, as you know, I had moved

22    this one over until today after having expressed, as I

23    recall, my views on what the case law pointed toward here.

24    Although -- or did I not go through that material?

25    MR. MAY: Judge, I -- I think last week we had --

Ex 1-2

1   you had advised, the Court, as to where you stood on the
2   case.
3           THE COURT:  That is what I --
4           MR. MAY:  And then --
5           THE COURT:  Yes.
6           MR. MAY:  And then your sense -- I think your word
7   was "sensitivity" as to the claimants' Fifth Amendment
8   rights.  And you had suggested some type of -- something
9   under seal.  I had asked for approximately a week to go back
10  and consult.
11          THE COURT:  Right.
12          MR. MAY:  I have done some research.  I have looked
13  at the statute.  And it is Government's position that this
14  Court under 981(g)(3) allows the Court to enter, in lieu of a
15  stay, a protective order that can be fashioned at the Court's
16  discretion for -- I think where -- what the Government needs
17  in this.  The only caveat is that under that particular
18  (g)(3) section you can order limited discovery to protect the
19  interests of one party without fairly limiting the ability of
20  the opposing party to pursue the civil case.
21          I have a copy of the section here, if you want to
22  read it or look at.
23          Judge, I also did some research and there is not
24  anything exactly on point.  In some of the forfeiture cases
25  there are stays that are --

Ex 1-3

1    THE COURT:  Well, it is not a stay.

2    MR. MAY:  Well, the stay is denied.  But these

3  protective orders -- the requirement is as long as it doesn't

4  severely allow one party to do something and prevent the

5  other party from -- from not doing something.  And most of

6  the cases that I found have been in the context that allowing

7  the claimant to proceed under the protective order would

8  fairly impinge upon the Government's criminal case.

9    There is a District --

10    THE COURT:  But this one -- this one is the state

11  case.

12    MR. MAY:  Correct.

13    THE COURT:  Not the federal --

14    MR. MAY:  Correct.

15    THE COURT:  -- case.

16    MR MAY:  But I am just saying that that is -- the

17  cases I found talking about these kind of protective orders

18  go in that direction.  There is a case from Judge Kocoras

19  from 1992 in a case that talks about a protective order, but

20  they don't really address it in that case, but it has been

21  held at least in the 1st Circuit and the Second Circuit that

22  these protective orders back in the mid 90s were something

23  that the Court could allow in light of the Fifth Amendment

24  concerns of the part -- of the Court.

25    The Government has no objection to a protective

Exp. 4

1  order in this case.  It is the Government's position that --
2  I think where I see the case at this point, Judge, is that we
3  have challenged the standing based upon the claims that they
4  have filed.

5  THE COURT:  Right.

6  MR. MAY:  We have served special interrogatories
7  upon the defendants.  They have not answered those.  And they
8  have sought a stay.

9  And a case that I cite in -- in our brief is United
10  States versus $410,000.00, and I think that case, Judge, is
11  in the same exact posture as we are here where the claimants
12  had filed a motion to stay and the Court denied it saying
13  that they had not yet shown the standing.  The Government had
14  served interrogatories, special interrogatories and the
15  Government had sought to compel them to answer these.  The
16  Court denied with leave to re-in -- to re-bring the motion to
17  stay, but the Court in the District Court of New Jersey
18  ordered the claimants to answer the interrogatories and then
19  it could address the -- the issues there.

20  And I think that is what the Court -- that is what
21  the Government will be -- would be willing to fashion, is
22  some kind of a protective order that they answer these and at
23  least respond to these special interrogatories in some
24  fashion, whether they object to them or take the Fifth
25  Amendment or whatever they do.  But they haven't even done

Ex 1-5

1 | that yet.

2 | THE COURT: Well, I think with all respect that

3 | poses somewhat of a chicken and egg problem because it seems

4 | to me that the protective order ought to be in place at the

5 | time of response to the interrogatories so that the -- they

6 | come to the Government without the Government having some

7 | responsibility of some type --

8 | MR. MAY: We are willing --

9 | THE COURT: -- to be.

10 | MR. MAY: We are willing to do that.

11 | THE COURT: Okay. Because I think that really has

12 | to be, as I say, in place.

13 | Now let me ask, as you heard I had suggested

14 | essentially that the last time that you were here because of

15 | what I characterized -- and Mr. May has repeated -- as

16 | sensitivity to the Fifth Amendment consideration. Keep in

17 | mind, just as I said last time, that I am not in a position

18 | to guarantee what the consequence may be in connection with

19 | the state proceeding,, that is, I am not sure whether the

20 | Supremacy Clause would kick in if a state judge were to

21 | disregard the protective order. And I really cannot predict

22 | that.

23 | All I am saying is that I think that the optimum

24 | result from the point of view of the prospective claimants is

25 | the one that I have just described. How does that strike you

Ex 1-6

1  out on the phone?

2          MR. MICHAEL:  You are asking me, your Honor?

3          THE COURT:  Yes.

4          MR. MICHAEL:  Well, I -- as the Court knows, there

5  is in fact an ongoing criminal prosecution in the State

6  Court.  And we are really sensitive to that.  We are in the

7  middle of litigating that case.  And of course there is -- in

8  this case, which will also impact the Court in the Federal

9  Court, is this big issue of the search that ensued at the

10 claimant's property and her home because it involved a GPS

11 tracking device.  And the U.S. Supreme Court has just

12 recently ruled on that in U.S. versus Jones.

13         THE COURT:  Yes, I am aware of that.

14         MR. MICHAEL:  Right.  And so we have a big issue

15 and it is going to be an interesting issue that we are going

16 to be litigating in the State Court proceeding.  So it seems

17 to me from a practical point of view that it is best to stay

18 this case and see what happens in the --

19         THE COURT:  The answer -- the answer to that -- the

20 answer to that is no.  I told you that last time.  I made a

21 suggestion that I thought was constructive for your point of

22 view, because you are not entitled to a stay because the

23 forfeiture on its face is something that is a legitimate

24 proceeding on the part of the Government.  And you don't

25 really have established standing at this point.  In order --

Ex 1-7

1  you are --

2  MR. MICHAEL: I understand that, your Honor. I was

3  going to continue. It appears to me that the focus right now

4  in terms of this protective order is whether or not our

5  clients can establish the standing that is required to get a

6  stay under 981(g)(2) because that is the second prong of

7  whether or not the Court must stay the forfeiture proceeding

8  because certainly we have satisfied the first prong that the

9  claimants are subject to the related criminal investigation

10 and case.

11 THE COURT: Let me --

12 MR. MICHAEL: And the second prong is standing. So

13 my perspective of what we discussed at the last appearance is

14 that this Court was thinking about fashioning a protective

15 order in order to allow the claimants to establish their

16 standing in response to the special interrogatories. Am I

17 correct on that, your Honor?

18 THE COURT: Yes.

19 MR. MICHAEL: Okay.

20 THE COURT: I mean, you know, you don't have to

21 educate me on that one. I am the one that came up with the

22 idea that you thought was helpful to your clients, so you

23 don't have to persuade me about that.

24 MR. MICHAEL: That is true. I wasn't. I was just

25 trying to make clear in my mind that that was the focus.

Ex1-8

1    THE COURT:  That I can't control.

2    MR. MICHAEL:  And so I am -- I don't -- you know, I

3    have talked to Mr. May yesterday about this issue of a

4    protective order.  And I -- I don't have a -- I think that it

5    is somewhat of an undeveloped area.  And I don't have any

6    strong objection to it if the purpose of it is to assist the

7    Court in determining standing.  I think that the Court has

8    the power to do that and issue a protective order regarding

9    the responses to the special interrogatories, although --

10    THE COURT:  So are you looking the gift horse in

11    the mouth or what?  I am not sure I understand the nature of

12    your response.  You are dancing around it.  But is there any

13    reason that we shouldn't proceed in the fashion that Mr. May

14    has suggested and in which I responded that the protective

15    order should be in place so that it can be coupled with an

16    order on you people to respond to the interrogatories?

17    MR. MICHAEL:  Yes, I agree with that, your Honor,

18    but I -- knowing also that we have no way to predict what the

19    consequences of that -- ultimate consequences of that may be.

20    And certainly in responding -- if the Court issues a

21    protective order and we are to respond to the special

22    interrogatories under that protective order, we still have

23    the right to assert whatever defenses we have or objections

24    we have to the interrogatories themselves.

25    THE COURT:  Like what?

Ex 1-9

1        MR. MICHAEL: Well, there -- A, the interrogatories

2    may exceed the boundaries of Rule (g)(6). That is one

3    objection we could have. Whether or not it impacts any other

4    right I don't know.

5        THE COURT: Don't -- let's not speculate, you know.

6    If -- I know lawyers are fond of hedging, but this is too

7    much. I gave you a suggestion the last time around that was

8    constructive for your people. Mr. May did a lot of work on

9    it. He has come up with the idea that, yes, that is a

10    permissible thing from the perspective of some other

11    decisions that have done that. I, frankly, was perfectly

12    willing to reach out even if there was not sustained law

13    covering it, because I was concerned about your client's

14    rights, Fifth Amendment rights, in a state proceeding over

15    which I have do not have jurisdiction.

16        But you know, let's fish or cut bait. Answer me

17    whether this proceeding will go ahead on the basis that I

18    have talked about. And don't start dealing with me in terms

19    of speculation about maybe you will have an objection to the

20    interrogatories. I am prepared to order responses to the

21    interrogatories because they have to do, I gather, with the

22    basis for any kind of claim.

23        Now you are not going to give up any rights by

24    reason of that because of the fact that everything is going

25    to be basically filing under seal pursuant to the protective

1    order.  So it is going to be within the bosom of this Court

2    and not the State Court.  So I am not sure I understand the

3    waffling that I hear from you.

4        MR. MICHAEL:  I am not waffling at all, your Honor.

5    I have litigated this whole issue of the special

6    interrogatories in many, many courts.  And there are issues

7    related to valid objections that we may have to the special

8    interrogatories even within the confines of a protective

9    order.

10       THE COURT:  Well --

11       MR. MICHAEL:  It is not just about --

12       THE COURT:  -- we will only know that when we come

13   to it.

14       MR. MICHAEL:  Yes, that is true, your Honor.

15       THE COURT:  Okay.

16       MR. MICHAEL:  I just wanted to make that point that

17   we may have objections based on other reasons to answer.

18   Just like any other discovery request, we may respond by

19   answering, by denying, by objecting to them on certain

20   grounds.  Having the protective order I think is an element

21   that protects a lot of this process to go forward at least at

22   this stage.  And I am not disputing that, your Honor.  I

23   think you have the power under 981(g)(3) to issue a

24   protective order in lieu of a stay.

25       THE COURT:  Mr. May, do you want to draft a

1  proposed protective order, submit it to counsel?  I expect
2  that I will get the -- get the thing very promptly.  And then
3  at that point you are -- I am -- how much time would be
4  needed to respond to the special interrogatories?
5           MR. MAY:  Judge, he has had them for months.
6           THE COURT:  Yeah, that I know.  I am asking
7  counsel.
8           MR. MAY:  Oh, sorry, Judge.
9           MR. MICHAEL:  Mr. -- if Mr. May can have a
10  stipulation or a draft protective order that we can review
11  and give to the Court to sign by next week, if we could have
12  an additional 21 days after the Court signs a protective
13  order, I would appreciate that.
14           THE COURT:  You don't need 21 days.  You have had
15  it for months.  You should have been prepared to do this
16  promptly.  You know, I fail to -- I fail to understand why
17  some people seem to have a will towards self-destruction.
18  The first constructive thing that came out of this one was
19  the suggestion that I had made last time.  I finally got I
20  think a positive answer from you.  You know, my impolite
21  reference to waffling was frankly a considered one.  I expect
22  a direct answer when I ask a question of counsel.  I finally
23  got one.
24           So as far as I am concerned you get to work right
25  now on the responses to the interrogatories, and there is no

Ex 1-12

1  reason you have to wait in the preparation of the responses

2  until we get the protective order lined up.  You are not

3  going to have to deliver the responses until then.  So I am

4  -- I am going to provide that you get two weeks from today

5  for purposes of responding to the special interrogatories.

6           And I expect that in the interim Mr. May is going

7  to draft something, going to submit it to you and to me, and

8  we will work at and make sure that we have an appropriate

9  protective order in place.  Okay?

10          MR. MAY:  Thank you, Judge.

11          MR. MICHAEL:  Yes, that is okay, your Honor.  I

12  just feel a little bit -- I don't know what the word is --

13  somewhat embarrassed that I am being chastised in the way

14  that the Court is chastising me.

15          THE COURT:  Well, you should be.

16          MR. MICHAEL:  I work diligently and I assert a lot

17  of effort in my cases.  I take very serious -- I take

18  everything very seriously.  And I certainly don't waffle and

19  I don't try to avoid being direct with the Court about issues

20  that exist.

21          THE COURT:  Counsel, I take things very seriously

22  as well.  Okay?

23          So that is the order.

24          MR. MAY:  Thank you, Judge.

25          THE COURT:  Thank you.

Ex 1-13

1    MR. MICHAEL:  Thank you, your Honor.

2    (Which were all the proceedings heard.)

3                      CERTIFICATE

4    I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    s/Rosemary Scarpelli/          Date:  August 29, 2012

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Ex 1-14



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 7803 |
| | ) | |
| | ) | Judge Milton I. Shadur |
| V. | ) | |
| | ) | |
| FUNDS IN THE AMOUNT | ) | |
| OF $574,840, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| Stephen Unsworth and Rachel Pillsbury, | ) | |
| | ) | |
| Claimants. | ) | |

PROTECTIVE ORDER LIMITING THE DISCLOSURE OF
CLAIMANTS' RESPONSES TO SPECIAL INTERROGATORIES

Pursuant to 18 U.S.C. § 981(g)(3), and upon review and consideration of the parties'

request for entry of a Protective Order Limiting Disclosure of Claimants' Responses to

Special Interrogatories, IT IS HEREBY ORDERED, that:

A.      Claimants shall respond to the United States' Special Interrogatories on or

before March 26, 2012;

B.      Claimants shall not be required to provide their responses to the plaintiff,

United States of America, until this Protective Order Limiting Disclosure of Claimants'

Responses to Special Interrogatories is entered by this Court;

C.      The United States of America, in the above-captioned matter, and its attorneys

shall not disclose the claimants' responses to the Governments Special Interrogatories, except

Ex. 2-1

to the following persons: (1) the assigned Assistant United States Attorney, Daniel E. May, and Assistant United States Attorney, Brian Hayes, Chief, Money Laundering and Asset Forfeiture Section; and (2) any other person only upon the Court's prior consent.

D.     Claimants' responses to the Special Interrogatories shall be used only in the litigation of this case, 11 C 7803, and shall not be disclosed without this Court's prior consent;

E.     Claimants, by entry of this protective order, do not waive their rights against self-incrimination in providing responses to the Special Interrogatories in this case or any other proceeding;

F.     Claimants' attorneys have been afforded the opportunity to review a proposed draft of this Order;

SO ORDERED AND ENTERED:

Dated: _March 14, 2012_

_Milton I Shadur_

MILTON I. SHADUR
United States District Judge

Ex 2-2