IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 11-cv-07803 |
| FUNDS IN THE AMOUNT OF $574,840; FUNDS IN THE AMOUNT OF $63,184; FUNDS IN THE AMOUNT OF $2,000; FUNDS IN THE AMOUNT OF $856; and FUNDS IN THE AMOUNT OF $21,100, | ) ) ) ) ) ) | Judge Sharon Johnson Coleman |
| Defendants. | ) ) | |
| STEPHEN UNSWORTH, and RACHEL PILLSBURY, Claimants. | ) ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

In this *in rem* action, the Government seeks forfeiture of funds in the amount of $574,840; $63,184; $2,000; $856; and $21,000 ("Funds") pursuant to 21 U.S.C. § 881(a)(6), alleging the funds were "furnished and intended to be furnished in exchange for a controlled substance, are the proceeds from the sale of a controlled substance, and was property used and intended to be used to facilitate narcotics trafficking, in violation of 21 U.S.C. § 801 *et seq*." Claimants Stephen Unsworth and Rachel Pillsbury filed verified claims alleging ownership and possession of the Funds. On July 3, 2014, Claimants moved to suppress [103] the Funds as evidence obtained as a result of illegal searches and seizures. Before the Court set a briefing schedule on Claimants' motion to suppress, the Government filed a motion to compel [115] Claimants' responses to special interrogatories propounded under Supplemental Rule G(6) of the Federal Rules of Civil Procedure. Based on the foregoing, Claimants' motion to suppress is denied without prejudice, and the Government's motion to compel is granted.

**Background**

This forfeiture *in rem* arises from a marijuana trafficking investigation that resulted in Claimants Unsworth and Pillsbury being charged and prosecuted in Circuit Court of Cook County with various drug trafficking crimes. In their drug trafficking case, Claimants' moved to suppress

1

evidence obtained as a result of warrantless searches and seizures. Officer Yandell, a police officer in Champaign County, testified during the pre-trial suppression hearing. He explained that the investigation into Unsworth and Pillsbury began when law enforcement received a tip from individuals claiming to have purchased approximately 110 pounds of marijuana from Unsworth on three separate occasions and explained that Pillsbury and Unsworth were in a romantic relationship. Yandell found that Unsworth had a Colorado address and Pillsbury had a Chicago address. The investigation also revealed that Unsworth had marijuana trafficking cases in Cook County, Illinois, and in Florida. Yandell contacted Agent Healy with the DEA taskforce and learned that Healy had an ongoing investigation of Unsworth. Two days after speaking with Healy, on June 10, 2011, Yandell, installed a covert Global Positioning System "(GPS") tracking unit on a Dodge minivan with a Colorado license plate that was registered to Unsworth. The vehicle was located inside the parking garage of Claimants' apartment complex. (Dkt. 103, Exh. A.) Yandell asserts that he entered the building through the unlocked west door. He did not have a warrant to install the GPS unit. The GPS unit was battery-operated and did not take up any space in the car that would have been reserved for passengers or packages. The GPS also did not alter the vehicle's appearance.

The tracking data obtained from the GPS unit on June 20, 2011 indicated that the vehicle visited a storage facility on Ogden Avenue in Cicero, Illinois, on three occasions. Yandell contacted Healy, who obtained an administrative subpoena to search the storage unit. That same day, officers went to the storage facility and spoke to the facility staff and learned that Pillsbury was renting a storage unit. The officers conducted a canine search of the unit which led to the seizure of $574,840.

Healy testified during the State court suppression hearing that he was a member of the Evergreen Park police department and a member of the Drug Enforcement Agency taskforce. He learned during his investigation that Unsworth had previously been arrested by the Chicago Police Department and charged in 2007 "with approximately 300 pound[s] of marijuana that was stored in a storage unit."[1] (Dkt. 103, Exh. 2, at 83). On June 17, 2011, Healy placed a tracking device on the outside of Unsworth's vehicle and he repositioned Yandell's device, which was not working properly. He did not have a warrant to place the device on the vehicle and testified that, at the time, a warrant was not required in Illinois. (Dkt. 103, Exh. 2, at 86.) He spoke with an Assistant State's Attorney and understood that there was no law at the time requiring a search warrant to place a tracking device on the outside of vehicles. Healy also testified that he entered the garage of

---

[1] Unsworth states in his response to Special Interrogatory No. 2 that he was charged in 2007 and convicted in the Circuit Court of Cook County in 2008 of possession of greater than 5000 grams of marijuana.

Claimants' apartment building through an unlocked door on the west side of building that led into the garage.

DEA Agent Kosmowski testified during the suppression hearing that Healy informed him of the positive canine sniff at Unsworth's storage locker. Kosmowski and a team of officers then went to Unsworth and Pillsbury's apartment complex to conduct surveillance. Kosmowski entered the garage with two other officers. Unsworth approached and asked whether they were police and they replied that they were. Unsworth asked if the officers were there to investigate car burglaries and thefts. Kosmowski replied that he was conducting an investigation, but did not specify what he was investigating. Kosmowski also asked Unsworth for identification, which Unsworth did not have, and then Kosmowski asked if he could pat down Unsworth for the officers' safety and Unsworth said yes. After patting him down, Unsworth and the officers entered the apartment building lobby and were joined by Agents Wood and Zieminski. Unsworth offered to escort the officers upstairs so he could get his identification to show the officers.

When Unsworth led the officers into the apartment, he retrieved his identification from the kitchen. Agent Wood told Unsworth that the officers were investigating him regarding his involvement in trafficking marijuana and asked whether Unsworth had any drugs in the apartment. Unsworth said he had marijuana but that it was for personal use. Unsworth showed the officers the marijuana that he stored in three to four 10-inch glass jars in a kitchen cabinet. There appeared to be more than 500 grams of marijuana. Kosmowski also observed large Ziploc baggies that had been torn open, a heat sealer, and about five cell phones. In Kosmowski's experience, such paraphernalia are consistent with drug trafficking. Agent Wood asked Unsworth whether he consented to a search. When Unsworth refused, the officers placed him in custody. Pillsbury appeared from another room in the apartment and they also placed her under arrest after confirming her identity. The officers then obtained a search warrant which led to the searches of Claimants' apartment, vehicles, storage lockers held in their names in Cicero, Illinois, and Denver, Colorado, and the seizures of the Funds.

Other testimony at the State court suppression hearing included that of DEA Agent Wood who testified consistently with the other officers and Officer Howard who testified about the positive canine sniff.

Private investigator Laskey testified at the State court suppression hearing on behalf of Claimants. The defense hired him to investigate the door in Claimants' garage where Yandell and Healy testified they entered to install the GPS unit. The officers testified that the door was unlocked when they entered. Laskey's investigation revealed, however, that the door was actually a very heavy

3

fire exit door that remained locked from the outside and could only be opened using a push-bar from the outside. Moreover, the door had not been altered or repaired since at least the end of 2009.

The Circuit Court granted Claimants' motion to suppress in its entirety and the criminal charges against them were eventually dismissed. (Dkt. 103, Exh. 2, at 441-46.) On November 3, 2011, prior to the dismissal of the criminal charges, the Government brought the instant civil forfeiture claim. Unsworth and Pillsbury both filed claims opposing forfeiture of the defendant properties and then in January 2012, they moved to stay the civil forfeiture case until the conclusion of the criminal case. The district court denied the motion to stay, finding that Unsworth and Pillsbury lacked standing to contest the forfeiture. The Seventh Circuit reversed and remanded (*U.S. v. Funds in the Amount of $574,840*, 719 F.3d 648, 651 (7th Cir. 2013)), and the case was reassigned to this Court. Before the Court are two motions: Claimants' motion to suppress and the Government's motion to compel responses to special interrogatories.

**Discussion**

*1. Standing to Contest the Forfeiture*

Standing is a threshold issue that the Court must resolve before reaching Claimants' motion to suppress [103] and the Government's motion to compel [115]. A claimant in a civil forfeiture proceeding must have both statutory standing and Article III constitutional standing. Establishing standing to contest a forfeiture is not a demanding standard to achieve. *See U.S. v. 5 S 351 Tuthill Road, Naperville, Ill.*, 233 F.3d 1017, 1022 (7th Cir. 2000) (describing the Article III standing requirements as "undemanding"). "[T]o have standing, a claimant need not establish that a right of his has been infringed; that would conflate the issue of standing with the merits of the suit. Instead, he must have a colorable *claim* to such a right." (Emphasis in original.) (Internal quotes and citations omitted.) *United States v. $304,980.00*, 732 F.3d 812, 818 (7th Cir. 2013).

Rule G(5)(a)(i) provides that when asserting an interest in the defendant property, the claim must: identify the specific property claimed; identify the claimant and state the claimant's interest in the property; be signed by the claimant under penalty of perjury; and be served on the designated government attorney. Supp. R. G(5)(a)(i); *see also U.S. v. Funds in the Amount of $574,840*, 719 F.3d 648, 651 (7th Cir. 2013). The Seventh Circuit reviewed the standing issue currently before this Court and provided guidance for how the district court should proceed when dealing with standing issues in forfeiture *in rem* actions:

> "At the pleading stage Article III standing is something to be alleged, not proved. All that must be alleged is an injury, personal to the person seeking judicial relief, that the court can redress, an injury such as the injury inflicted by the government when it has got hold of

4

money that belongs to the person and refuses to return it. This is constitutional law 101. Rule G(5) requires more, but the more is an addition to what is required to plead Article III standing." *Id.* at 651.

The government must prove by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1); *see also Funds in the Amount of $574,840*, 719 F.3d at 653. "The government can move to strike a claim to property on the ground that the claimant has no interest in it, but it cannot just say to him: prove it's your property." *Funds in the Amount of $574,840*, 719 F.3d at 653. If the claimant complies with Rule G(5)(a)(i), signing the claim under penalty of perjury, identifying the claimant and the nature of the claimant's interest, then the burden shifts to the government to produce evidence that the claim is invalid. *Id.* The government may file special interrogatories, which the government did in this case, in order to obtain discovery to determine whether the claimants have valid claims. *Id.* In concluding that Claimants' motion to stay should have been granted, the Seventh Circuit also concluded that Claimants have established Article III standing at the pleading stage. This case is still in the pleading stage.

*2. Suppression*

Now that the Court has concluded that Claimants have Article III standing, the Court turns to the suppression issue. Claimants filed a joint motion to suppress and/or to quash search warrant pursuant to the Fourth Amendment and Supplemental Rule G(8)(a). Supplement Rule G (8)(a) states:

> If the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence. Suppression does not affect forfeiture of the property based on independently derived evidence.

In order to bring their motion to suppress, Claimants must first establish standing by showing that they had a reasonable expectation of privacy in the places searched and items seized. A reasonable expectation of privacy includes two elements: (1) whether the individual has "exhibited an actual (subjective) expectation of privacy," and (2) whether the individual's subjective expectation of privacy is one that society recognizes as reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (*citing Katz v. United States*, 389 U.S. 247, 361 (1967) (Harlan J., concurring)); *Mendoza*, 438 F.3d at 795.

In Unsworth's Second Amended Verified Claim to the funds, he claims an ownership and possessory interest and the right to exercise dominion and control over the $574,840, $63,184, and $2,000 defendant properties. According to his response to the Government's Special Interrogatory Number 3, Unsworth was the owner and possessor of the $2,000 seized from his vehicle, so he "possessed the property immediately prior to seizure on that date [June 20, 2011] and otherwise

5

regularly exercised dominion and control over" the property until it was seized. He also claims to own the $63,184 seized from his residence because he similarly possessed the funds and exercised dominion and control of the property. Finally, Unsworth claims to be the owner and possessor of the $574,840 seized from the Cicero storage unit. He exercised dominion and control over the property immediately prior to its seizure because he accessed the storage unit on June 19 and June 20 before law enforcement seized the property. (Dkt. 115, Exh. 4.)

In response to Special Interrogatory Number 3, Pillsbury claims only a possessory interest in the $574,840 defendant property because she rented the storage unit in her own name where the funds were found. (Dkt. 115, Exh. 5.) She claims that Unsworth owned the funds. Unsworth had unrestricted access to the storage unit and also maintained his own possessions in the unit. Pillsbury claims both ownership and possessory interests in the $63,184 defendant property that was seized from the apartment she shared with Unsworth, approximately $30,000 of which was seized from the blue backpack that she carried into the apartment immediately prior to its seizure. Pillsbury claims an ownership and possessory interest in the $21,100 seized from the storage unit she rented in her own name in Denver, Colorado. She claims an ownership and possessory interest in the $856 seized from her car, which she possessed immediately prior to the property's seizure. She also claims the right to exercise dominion and control over all of the defendant properties except the $2,000 seized from Unsworth's vehicle.

Claimants do not provide any evidence of, nor does the record show, how they came to possess or own the funds or any other evidence that would allow this Court to ascertain whether their subjective privacy interest in the funds was objectively reasonable. Claimants merely respond to the locations of where the Funds were seized. The Court simply does not have sufficient evidence at this time to conclude that Claimants have standing to bring their motion to suppress. Therefore, Claimants' motion to suppress is premature and is denied without prejudice.

*3. Motion to Compel*

Supplemental Rule (6)(a) permits the Government to serve special interrogatories aimed at Claimants' identities and relationships to the defendant property. The Government is entitled to responses. Claimants offered lengthy objections to all of the Special Interrogatories and only provided conclusory responses regarding their ownership and possessory interests that added nothing new or different to their claims than what they provided in their second amended verified claims to the funds. (Dkt. 115, Exhs. 4 and 5; *see Funds in the Amount of $574,840*, 719 F.3d at 653 (after reviewing this case, the Seventh Circuit concluded that, due to the lack of evidence of

Unsworth and Pillsbury's claims, the Government needed discovery in order to determine whether the claimants have valid claims (Posner, J.)). Therefore, the Government's motion to compel responses to its Special Interrogatories is granted.

**Conclusion**

Claimants' motion to suppress [103] is denied without prejudice. The Government's motion to compel [115] is granted. The parties are referred to Magistrate Judge Cole who will supervise the resolution of any further disputes the parties may have regarding the Special Interrogatories. Claimants have 45 days to respond to the Government's Special Interrogatories, including resolving any disputes. The Court will entertain no further delays related to this discovery issue. After the expiration of the 45-day deadline, this matter will proceed to the dispositive motion phase, and if Claimants so choose, the Court will also address their motion to suppress again at that time.

IT IS SO ORDERED.

Date: <u>March 31, 2015</u>　　　　　　　　　　Entered: _____

　　　　　　　　　　　　　　　　　　　　　　　　　SHARON JOHNSON COLEMAN