**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 11 C 7803 |
| ) | |
| v. ) | Judge Coleman |
| ) | |
| FUNDS IN THE AMOUNT OF $574,840; ) | Magistrate Judge Cole |
| FUNDS IN THE AMOUNT OF $63,184; ) | |
| FUNDS IN THE AMOUNT OF $2,000; ) | |
| FUNDS IN THE AMOUNT OF $856 and ) | |
| FUNDS IN THE AMOUNT OF $21,100, ) | |
| ) | |
| Defendants. ) | |
| STEPHEN UNSWORTH and ) | |
| RACHEL PILLSBURY, ) | |
| ) | |
| Claimants. ) | |

**MEMORANDUM OPINION AND ORDER**

On March 31, 2015, Judge Coleman granted the government's motion to compel responses to Supplemental Rule G(6) interrogatories. She explained that the claimants had simply "offered lengthy objections" and "only provided conclusory responses regarding their ownership and possessory interests that added nothing new or different to their claims than what they provided in their second amended verified claim to the funds." [Dkt. # 143, 144, at 6]. The judge also noted that Judge Posner, writing for the Seventh Circuit in a previous appeal in this matter from the dismissal of the case by a different district judge, *United States v. Funds in the Amount of $574,840, et al.*, 719 F.3d 648 (7th Cir. 2013), had said that the government needed discovery in order to determine whether the claimants have valid claims. [Dkt. # 144, at 6-7]. Here is how Judge Posner put it:

> [T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1); ..... The government can move to strike a claim to property on the ground that the claimant has no interest in it, but it cannot just say to him: prove it's your property. Remember that the claim that Rule G(5)(a)(I) requires of a claimant is not just a naked statement "I want the dough." It must be signed under penalty of perjury and identify the claimant and the nature of his interest. It is evidence,...and shifts to the government the burden at least of production of evidence that the claim is invalid—as the government appears to have recognized. For it was the absence of evidence countering the claims in this case when they were filed that motivated the serving of special interrogatories on the claimants; the government needed discovery in order to determine whether the claimants had valid claims.

719 at 653.[1]

Judge Coleman gave the claimants 45 days – or until May 15th – in which "to respond to the Government's Special Interrogatories, including resolving any disputes." [Dkt. # 144, at 7]. This was the kind of discovery that Judge Posner's opinion made clear was necessary and proper. She then referred the matter here for "discovery supervision; most specifically the resolution of any further disputes the parties may have regarding the Special Interrogatories." [Dkt. #145]. Surprisingly, the disputes remain. Little or nothing has changed since Judge Coleman's March 31st Order. On May 7th, the claimants filed supplemental responses to the special interrogatories. The government filed a terse "motion for a finding of non-compliance" arguing that the supplemental responses to interrogatories 3, 4, 5, 6, 7, 11, 12, and 13, were non-compliant, but did not elaborate

---

[1] The district court had stricken the claimants' claims to the funds for non-compliance in connection with their responses to special interrogatories. The Seventh Circuit overturned that ruling and remanded the case for further proceedings. As it happened, the government had put the cart before the horse and sought forfeiture of the funds before the state criminal case against the claimants had been resolved. The district court refused to grant a stay of the forfeiture proceedings and issued a protective order instead. But, then he struck the claimants' claims to the funds because they refused to answer the interrogatories and, he concluded that as a result, there was no evidence that they had Article III standing to pursue the funds. The Seventh Circuit explained that, at the pleading stage, evidence was no necessary and the claimants' allegations sufficed. 719 F.3d at 650-51. On remand, the case was assigned to Judge Coleman.

as to why. [Dkt. # 152]. Finding that briefing deficient and unhelpful, *see Kyles v. J.K. Guardian Sec. Services,* 236 F.R.D. 400, 401-402 (N.D.Ill. 2006), I ordered the government to file a brief explaining what the deficiencies in those response might be. [Dkt. #154]. It did, on May 19th. [Dkt. #157].

Basically, the government argued that the "supplemental" responses were not supplemental at all. They were nothing more than restatements of the claimants' objections to answering interrogatories in the first place and, where responses were provided, they added nothing to the responses Judge Coleman had already found deficient. The government explained that Judge Coleman had demanded that the claimants provide evidence beyond conclusory allegations of ownership as to how they came to possess or own the funds. [Dkt. # 157, at 4-8; Dkt. #144, at 6]. Inexplicably, the claimants responded not so much to the government's arguments, but to Judge Coleman's March 31st Order. [Dkt. # 159]. They continued to maintain that at this stage of the case – the pleading stage – they need not respond to any special interrogatories because their pleading are enough to establish Article III standing. But the conclusion does not follow from the premise, as Judge Posner's opinion makes clear. *See supra*, at 1.

Beyond being analytically wrong, the claimants attack Judge Coleman and her Order. They say it is unclear why Judge Coleman believes further responses are necessary, [Dkt. # 159, at 1-2], and go on to call Judge Coleman's conclusions perfunctory and unsupported by any citation to authority, and accuse her of misreading the Seventh Circuit's opinion in this case. [Dkt. #159, at 2-3]. They say her Order is "totally wrong" in requiring response to any supplemental interrogatories. [Dkt. #159, at 3]. The claimants also criticize Judge Coleman's holding regarding their standing to assert a motion to suppress as "[c]ontrary to . . . long-established principles set out by the Supreme

3

Court . . . ." [Dkt. # 159, at 4], and say that it "blatantly confuses and conflates" the issues. [Dkt. #159, at 12]. The claimants' presentation does not even begin to explain how their criticisms of Judge Coleman's Order have anything to do with the question referred to me. They surely must know that I have no authority to overturn an order of the referring judge in this or any other case and that they cannot invert the review process established by 28 U.S.C. §636. Beyond ignoring the statutorily limited role of a magistrate judge, the claimants' "response" is essentially a motion to reconsider. Aside from being directed to the wrong person, such motions are singularly disfavored. *See e.g., Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.1990); *Vann v. Holder,* 539 Fed.Appx. 587, 588 (5th Cir.2013); 18B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4478 (2nd ed.2002).

It is not surprising that nowhere in the claimants' thirteen-page diatribe against Judge Coleman's March 31st Order do they so much as mention the law governing motions to reconsider or the effect of the law of the case doctrine. *See, e.g., Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (1988); *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012); *United States v. Harris,* 531 F.3d 507, 513 (7th Cir. 2008). A motion to reconsider is not a vehicle for advancing arguments or theories that "could and should have been made" prior to judgment. *United States v. Resnick,* 594 F.3d 562, 568 (7th Cir.2010). Nor is it an appropriate forum for rehashing previously rejected arguments. *Caissa Nationale de Credit Agricole v. CBI Indus., Ins.,* 90 F.3d 1264, 1270 (7th Cir.1996).

And so, even if the claimants had properly brought this "response" as a motion for reconsideration before Judge Coleman, she would almost certainly have denied it, and rightfully so, as arguments unsupported by citation to pertinent authority are deemed waived. *Puffer v. Allstate Ins.*

4

*Co.*, 675 F.3d 709, 718 (7th Cir. 2012); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir.1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). In any event, this is the wrong time and wrong place to question the Order. Obedience to it, not carping about its correctness, is all that is left.

But beyond these disturbing and self-defeating deficiencies, there is something even more fundamental that dooms the claimants' presentation and that is the overarching principle, conspicuously ignored by the claimants, that lawyers and parties must obey court orders, even those that are (or lawyers think are) invalid and incorrect, until the orders are modified or rescinded or reversed by a court. *See Boston Firefighters Union Local 718 v. Boston Chapter NAACP, Inc.*, 468 U.S. 1206, 1211 (1984); *Pasadena Board of Education v. Spangler*, 427 U.S. 424, 439-40 (1976); *Boston Firefighters Union Local 718 v. Boston Chapter NAACP, Inc.*, 468 U.S. 1206, 1211(1984); *Cleveland Hair Clinic, Inc. v. Puig,* 200 F.3d 1063, 1068 (7th Cir. 2000); *In the Matter of Krynicki,* 983 F.2d 74 (7th Cir. 1992)(Easterbrook, J.)(in chambers).[2] That is a rule that applies even to pro se litigants. *Jenkins v. Miles* 553 Fed.Appx. 638, 640 -641 (7th Cir. 2014); *Ammons-Lewis v. Metropolitan Water Reclamation Dist. of Greater Chicago,* 543 Fed.Appx. 591, 595 (7th Cir.2013). And so, it is utterly inconsequential that the claimants and their lawyer think Judge Coleman's Order and her legal reasoning "wrong." Lawyers and their clients "cannot be allowed to be the judges of the validity of court orders issued against them." *United States. v. United Mine Workers of America* 330 U.S. 258, 340 (1947). *See also, In re McGhan,* 288 F.3d 1172, 1180 -1181 (9th Cir. 2002).

---

[2] The claimants' joint response to the government's memorandum boldly and irrelevantly asserts that "Judge Coleman was in error to require Claimants to further answer Rule G(6) interrogatories...." [Dkt. #159 at 5].

5

Judge Coleman's ruling is, as the claimants concede, the law of the case. [Dkt. # 159, at 1]. That being so, the vast majority of their submission is of no consequence. Judge Coleman entered an Order, and even if it was erroneous, the claimants and their lawyer were required to obey it. If they did not, they risked contempt even if the Order is ultimately ruled incorrect. *Maness v. Meyers,* 419 U.S. 449, 458 (1975).

When the claimants finally do get around to discussing the quality of their supplemental responses, it is little more than an afterthought. [Dkt. #159, at 14]. All the while obdurately and conclusorily maintaining that they need not provide *any* responses, they insist they have added "extensive factual detail establishing their individual Fourth Amendment standing to challenge the search of each place in which the individual properties were found." [Dkt. #159, at 14-15]. But, their supplemental responses remain essentially the same as their previous responses. As Judge Coleman said last time, they "offer[]ed lengthy objections" and "only provide[] conclusory responses regarding their ownership and possessory interests that add[] nothing new or different to their claims than what they provided in their second amended verified claim to the funds" or their last try at responding – evading is a more accurate description – to the government's interrogatories.

In his original response to the interrogatories – the response Judge Coleman found insufficient – claimant Stephen Unsworth stated:

> I am the owner and possessor of all of the $2,000.00 defendant property identified in the above caption. Said property was seized by law enforcement from my 2005 Dodge Caravan vehicle on June 20, 2011, so I possessed the property immediately prior to seizure on that date and otherwise regularly exercised dominion and control over said property until it was seized from me.
> I own the $63.184 00 defendant property identified in the above caption. Said property was seized by law enforcement from my residence at 2811 North Bell, Chicago, Illinois, unit 401, so I possessed the property immediately prior to its seizure and otherwise regularly exercised dominion and control over said property

6

> until it was seized from me.
>
> I am the owner and possessor of all of the $574,840 00 defendant property identified in the above caption. Said property was seized by law enforcement from storage unit (# 3045) at Smartstop Self Storage, located at 5701 West Ogden, Cicero, Illinois, for which I had access. On June 19, 2011 [and June 20, 2011], I drove my 2005 Dodge Caravan vehicle to the storage facility and accessed unit # 3045, so I exercised dominion and control over the storage unit and said property immediately prior to when it was seized.

[Dkt. # 157-1, at 8]. The new, supposedly improved response that claimants say ought to provide adequate detail goes like this:

> I am the owner and possessor of all of the $2,000.00 defendant property identified in the above caption. Said property was seized by law enforcement from my 2005 Dodge Caravan vehicle on June 20, 2011, when it was parked in the locked garage building of my residence, the private apartment complex at 2811 North Bell, Chicago, Illinois. 2811 North Bell is a private apartment complex, and signs posted as you enter the apartment complex from the public street, and which arc plainly visibly as you stand near the west door of the garage building, indicate specifically and conspicuously that the entrance is to a private drive and that only residents of the apartments and their guests arc permitted access to the complex and its structures. Those signs were present at my residence on June 10, 2011 when police entered the locked garage building of 2811 North Bell and placed a GPS device on my van, which was parked therein. In any event, I possessed said $2,000.00 defendant property immediately prior to seizure on that date and otherwise regularly exercised dominion and control over said property until it was seized from me.
>
> I own the $63,184.00 defendant property identified in the above caption. Said property was seized by law enforcement from my residence at 2811 North Bell, Chicago, Illinois, unit 401, where I lived with Claimant Rachel Pillsbury, so I possessed the property immediately prior to its seizure and otherwise regularly exercised dominion and control over said property until it was seized from me.
>
> I am the owner and possessor of all of the $574,840.00 defendant property identified in the above caption. Said property was seized by law enforcement from storage unit (# 3045) at Smartstop Self Storage, located at 5701 West Ogden, Cicero, Illinois, for which I had access. On June 19, 2011 and June 20, 2011, I drove my 2005 Dodge Caravan vehicle to the storage facility and accessed unit #3045, so I exercised domain and control over the storage unit and said property immediately prior to when it was seized.

[Dkt. # 157-3, at 10].[3]

Rachel Pillsbury's responses follow a similar pattern, with a few exceptions. She adds that she is the owner and possessor of the $21,000 taken from a storage locker rented in her name in Denver, that she was the owner and possessor of the $856 taken from her Audi, and that the $63,184.00 was in her blue backpack, and that she was the renter of the storage unit where the $574,840.00 was found. [Dkt. #157-2, at 8; Dkt. #157-4, at 9]. In short, while the claimants' supplemental responses are slightly *longer* than their original response, they provide none of the detail demanded by Judge Coleman's Order of March 31, 2015.

While the reference to the requirement of evidence in the Order – while at the same time acknowledging that the case was still at the pleading stage – might have been beyond the ken of a layman or someone unfamiliar with Judge Posner's analysis in this case, it is "preposterous" – to use one of Judge Posner's favorite adjectives, *see e.g.*, *United States v. Shah*, 559 F.3d 643, 644 (7th Cir. 2009) – for the claimants to suggest that they didn't know what the Order required them to do. Indeed, the reference to "evidence" belies the claimants' accusation that they didn't understand the Seventh Circuit's holding in *$574,840.* And so, for the benefit of the claimants, we repeat Judge Posner's pellucidly clear explanation:

> The burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture. ... *For it was the absence of evidence countering the claims in this case when they were filed that motivated the serving of special interrogatories on the claimants; the government needed discovery in order to determine whether the claimants had valid claims*.

*$574,840*, 719 F.3d at 653 (emphasis supplied).

---

[3] The responses to interrogatory no. 3 serve as the factual responses to all the interrogatories at issue here. [Dkt. # 157-3, at 9-14].

8

Obviously, Judge Coleman recognized the government's need for evidence in order to meet the force of the claimant's initial sworn filings. It is not the government or Judge Coleman whose positions are "absurd" – a word repeatedly found in the claimant's submission to characterize the government's arguments – but the claimant's refusal not only to properly interpret Judge Posner's opinion to acknowledge that right or wrong, Judge Coleman's Order required them to answer the government's supplemental interrogatories. The fact that the claimants' lawyer may think "Judge Coleman was in error to require Claimants to further answer Rule G(6)(I) interrogatories," (Response at 5, Dkt. 159 at 5), is not a basis to continue to refuse to provide the information/ "evidence" required by Judge Coleman's Order. She clearly wanted responses that "identif[ied] the nature of [the claimants'] interest." 719 F.3d at 653. What she clearly did not want – for the *third* time – was the claimants to say where the bundles of cash were found or to expostulate pointlessly and endlessly on why the Order was unnecessary, or misguided or wrong, or how it "blatantly confuses and conflates" issues in the case [Dkt 159 at13].

## CONCLUSION

From the perspective of the obvious purpose of the Order – "where did you get the money?" – not "where did the government find it?" – the claimants' responses are meaningless. There is no other finding that can be made than that the claimants have not complied with Judge Coleman's March 31st Order. The consequences of the claimants' disobedience of the Order is for Judge Coleman to decide.

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 6/18/15

9